AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
DISTRICT OF SOUTH CAROLINA

United States of America
v.

YUN QIAN HU
MINGUO HU

*Defendant(s)*

Case No. 2:13 Mj 52

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 31, 2013__ in the county of __Colleton__ in the _____ District of __South Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 2320(a)(1); | Trafficking in Counterfeit Goods |
| Title 18 USC § 371; | Conspiracy |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

_____
*Complainant's signature*
Johnny Walton, Special Agent
Bureau of Immigration and Customs Enforcement
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 4, 2013

_____
*Judge's signature*
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and state: __Charleston, South Carolina__

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | |
| ) | **AFFIDAVIT** |
| COUNTY OF CHARLESTON ) | |
| ) | |

I, Johnny Walton, having first been duly sworn, depose and state as follows:

1. I have been employed as a Special Agent for the Department of Homeland Security (formerly, United States Department of the Treasury), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations (HSI) (formerly, United States Customs Service, Office of Investigations) since May 2002.[1] During that time I have conducted and participated in numerous criminal investigations involving, among other things, the unlawful importation into the United States of merchandise contrary to law, narcotics, alien smuggling, manufacture and sale of counterfeit documents, Export violations, money laundering violations, Customs fraud, Intellectual Property Rights (IPR) and other violations of Immigration and Customs law. I am currently assigned to the National Security, Strategic (Export) and Fraud Investigations Group at the Office of the Resident Agent in Charge, Charleston, South Carolina (RAC/CT). I am a graduate of the United States Customs Service Academy, a sixteen-week live-in training academy that gives basic and thorough indoctrination for U.S. Immigration and Customs Enforcement Special Agents. Prior to beginning my career as a federal law enforcement officer, I was employed as a Police Officer by the Charlotte-Mecklenburg Police Department in Charlotte, North Carolina for over 5 years.

---

[1] U.S. Customs became part of the Department of Homeland Security on March 1, 2003. Individuals who were formerly employed as Special Agents in the Department of Treasury, U.S. Customs Service, Office of Investigations, are currently referred to as "ICE agents."

1

2. The information contained in this affidavit is based on my own personal observations, as well as information from other law enforcement agents and trademark representatives. Since this affidavit is being submitted for the purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Yun Qian HU and Minguo HU have committed violations of Title 18, United States Code, Section 2320 (Trafficking in Counterfeit Goods) and Title 18, United States Code, Section 371 (Conspiracy).

3. On 5-31-2013 at approximately 9:30 a.m., Colleton County Sheriff's Office (CCSO) Lieutenant (Lt.) Marvin observed a grey Toyota van bearing New York registration FFZ-5998 (registered to Yun Qian HU, 1539 125th Street, 2FL, College Point, NY 11356) cross the yellow line in the left hand lane on I-95 south near mile marker 59. Lt. Marvin initiated a traffic stop on the vehicle and the vehicle came to a stop a short time later. CCSO Corporal (Cpl.) Kinard arrived on the scene as Lt. Marvin and the van were pulling onto the shoulder. As Lt. Marvin made a passenger side approach, Lt. Marvin could see a large amount of bags and other type of luggage in the rear of the vehicle. Lt. Marvin made contact with both occupants at that time.

4. Lt. Marvin explained to the occupants the purpose of the traffic stop and asked the driver for the vehicle information. Lt. Marvin observed both occupants acting extremely nervous and had trouble finding any paperwork to the vehicle. The driver, Minguo HU produced a New York driver's license that appeared to not match the driver's age. Minguo HU was asked to step to the rear of the vehicle while the passenger Yun Qian HU continued to search for the vehicle information.



5. Minguo HU told Lt. Marvin that they were driving to Miami, Florida for a vacation. Lt. Marvin found that the amount of luggage was not consistent with that story. Minguo HU then stated that he did not have a job and that he and Yun Qian HU were going to Miami, Florida to try to find work. Cpl. Kinard made contact with the passenger, Yun Qian HU to retrieve the paperwork to the vehicle. Cpl. Kinard also observed an excessive amount of luggage for the trip and observed Yun Qian HU appearing extremely nervous and shaking.

6. Lt. Marvin asked Minguo HU if there were any open containers of alcohol in the vehicle and Minguo HU stated that there was not. Minguo HU stated that they had been driving all night from New York. Minguo HU was asked about any other illegal contraband in the vehicle and he stated that there was not. Minguo HU was asked by CCSO deputies for consent to search the vehicle and its contents. Minguo HU gave the CCSO deputies permission to search his vehicle. Minguo HU was asked to open the rear hatch of the vehicle to which he complied. Cpl. Kinard looked inside the first bag and immediately recognized the contents of the bag to be suspected counterfeit watches based on his training and experience.

7. Yun Qian HU was then asked to step out of the vehicle. Minguo HU was questioned about the contents again and he stated that they were bags for sale. A further search of the vehicle revealed a large amount of suspected counterfeit purses, wallets, watches and sunglasses. At that time, Lt. Marvin asked both Minguo HU and Yun Qian HU to follow deputies back to the Sheriff's Office for further investigation about the contents of the vehicle. Minguo HU and Yun Qian HU complied without incident. At

3

that time, Lt. Marvin called RAC/CT HSI agents to assist in the investigation. Special Agent (SA) William Wooten and I arrived at the CCSO a short time later.

8. I asked Minguo HU if he would agree to speak to us about the contents of the vehicle and their travel details. Minguo HU agreed and voluntarily waived his Miranda Rights by signing a Department of Homeland Security Statement of Rights Waiver. Minguo HU stated that he came into the United States shortly after September 11, 2001, sometime in November or December 2001. Minguo HU stated that he flew into New York and made entry into the United States with a false Singapore passport. Minguo HU stated that the passport was not real, but did contain his actual information. Upon arrival in the United States, Minguo HU stated that the smuggler took the passport back and HU paid a smuggling fee of $20,000.00 to the smuggler.

9. Minguo HU stated that he worked at a supermarket in New York for approximately three (3) years and then began selling women's undergarments, socks, belts, batteries, men's wallets, etc. at a flea market in New Jersey. Minguo HU stated that he left New York and worked in Los Angeles and San Diego, California at flea markets in 2007 and 2008. Minguo HU then returned to New York and continued working at the flea market until November or December of 2012. Minguo HU stated that he was not currently working.

10. Minguo HU stated that he and his father Yun Qian HU left New York on 5-30-2013 at approximately 7:00 p.m. traveling to Miami, Florida switching driving responsibilities every two (2) hours. Minguo HU stated that they were traveling to Miami, Florida to sell the merchandise in the van at a flea market and stated that they have friends in Miami, Florida. Minguo HU stated that his father Yun Qian HU bought

the merchandise in the van on 28th Street in New York from a black male subject who had samples of the merchandise on a street corner. Minguo HU stated that he was with his father Yun Qian HU when he bought the purses for which Yun Qian HU paid approximately $800.00 to $1,000.00. Minguo HU stated that they bought the counterfeit purses approximately three (3) to four (4) days before leaving for Miami, Florida.

11. HU stated that he knew the merchandise in the van was counterfeit and that it was not real or authentic merchandise. HU stated that it was his idea for him and his father Yun Qian HU to travel to Miami, Florida to try to sell the merchandise at a local flea market in Miami, Florida. HU stated that they would probably stay in Miami, Florida for about a week. HU stated that he was aware his father Yun Qian HU had been previously arrested for selling counterfeit DVDs in Boston, Massachusetts approximately ten (10) years ago.

12. SA Walton and SA Wooten then asked Yun Qian HU if he would agree to speak to agents about the contents of the vehicle and their travel details. Yun Qian HU declined to speak to agents without an attorney present. At that time, CCSO Lt. Marvin placed Minguo HU and Yun Qian HU under arrest for Trafficking in Counterfeit Goods in violation of South Carolina Code 39-15-1190. Lt. Marvin then transported both subjects to the Colleton County Detention Center. CCSO also impounded their vehicle. The counterfeit merchandise is being maintained as evidence by the CCSO.

13. A complete inventory of the vehicle revealed the following contents:

| Quantity | Brand Name | Commodity |
|---|---|---|
| 3 | Dre Beat | Headphones |
| 100 | Michael Kors | Wallets |
| 70 | Louis Vuitton | Purses |
| 60 Pair | Gucci | Sunglasses |
| 36 Pair | Michael Kors | Sunglasses |
| 84 Pair | Ray Ban | Sunglasses |
| 36 Pair | Prada | Sunglasses |
| 115 | Gucci | Watches w/Diamonds |
| 2 | Gucci | Watches w/out Diamonds |
| 59 | Michael Kors | Watches w/Diamonds |
| 106 | Michael Kors | Watches w/out Diamonds |
| 2 | Gucci | Cellphone Covers |
| 1 | Michael Kors | Cellphone Covers |
| 20 | Chinese | DVDs |

14. Deputies and agents also located a Florida Department of Transportation Toll-By-Plate Invoice# INV013365477 addressed to Yun Q HU 1539 125th Street, 2FL, College Point, NY 11356. The invoice listed NY license plate FFZ-5998 violating various toll booths during the month of March 2013. The invoice also listed a previous balance of $115.75 that was paid on 4-15-2013 by check. Deputies and agents also located a Miami-Dade Police Department (MDPD) Complaint/Arrest Affidavit case# PD130224072144 showing that on 2-24-2013 Yun Qian HU was arrested by the MDPD

6



for Vending Counterfeit Goods over $2,500.00 dollars. The affidavit stated that Yun Qian HU was found at Bargain Town 24420 South Dixie Highway #125, Homestead, Florida 33030 selling counterfeit Beat headphones and sunglasses. Deputies and agents also located a tax notice addressed to JIAN HE TRADING INC., ATTN: Yun Qian HU, 1539 125th Street, 2FL, College Point, NY 11356 from Omega Accounting & Tax, Inc.

15. A query of the National Crime Information Center (NCIC) Criminal History database revealed that Yun Qian HU was arrested by the Boston Police Department (BPD) on 6-22-2002 related to the sale of counterfeit goods. There was also a second arrest related to the sale of counterfeit goods made by the MDPD on 2-24-2013.

16. A query of the Treasury Enforcement Communication System (TECS) revealed TECS record# P7S92527700CUN identifying Yun Qian HU as the target of a current ICE/HSI investigation. TECS record# X7S01458100CNY identified JIAN HE TRADING INC. 1539 125th Street, 2nd Floor, College Point, NY 11356 as the consignee of a container of work boots from China similar in appearance to Timberland brand boots. The record further stated that subjects at that address received a controlled delivery of counterfeit Timberland logos from China two weeks prior to the arrival of the container of boots.

17. On 6-3-2013 at approximately 12:30 p.m., Blazer Investigations[2] Investigator Rick Hawks and South Carolina Secretary of State (SCSoS) Investigator Doug Renew met with CCSO Lt. Marvin and examined the counterfeit merchandise

---

[2] Blazer Investigations Investigators are trademark representatives for the affected trademark holders of this investigation. Blazer Investigations Investigators have received extensive training from the trademark/copyright holders themselves on how to determine authentic merchandise from counterfeit/pirated merchandise.

7



seized from Minguo HU and Yun Qian HU on 5-31-2013. After examining the merchandise, Investigator Hawks confirmed that none of the merchandise was genuine and all of it bore counterfeit marks. Investigator Renew estimated the Manufacturer's Suggested Retail Price (MSRP) of the counterfeit merchandise to be approximately $454,900.00.

18. On the basis of the above described information, your affiant respectfully submits that there is probable cause to believe that violations of Title 18, United States Code, Section 2320 (Trafficking in Counterfeit Goods) and Title 18, United States Code, Section 371 (Conspiracy) have been committed by Minguo HU and Yun Qian HU. In consideration of the foregoing, I respectfully request that this Court issue an arrest warrant for Minguo HU DOB: 3-13-1977 and Yun Qian HU DOB: 4-17-1950.

This affidavit has been reviewed by AUSA Eric Klumb.

_____
Johnny M. Walton, Jr., Special Agent
United States Department of Homeland Security
United States Immigration and Customs Enforcement (ICE)
Homeland Security Investigations (HSI)

Subscribed and sworn to before me this 4th day of June 2013.

_____
Honorable Bruce Howe Hendricks
United States Magistrate Judge

8